**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

DEAN HOTOP; KEN SCHNEEBELI; JEFF ZELL; SHERMAN ZELL; LOIS ZELL; LOUISE PETER; SEIGI TADOKORO; PAT CREMA; SEAN RHINEHART; SHUCHUN HUANG; JAMES CAMPAGNA; SAL RUIZ; ISAAC AGAM; STEVE MAHL; LLOYD KIP; ROBERTA MOORE; DENG LIU; SHASHA CHEN; SMALL PROPERTY OWNERS ASSOCIATION - SAN JOSE; ZHONGHUA PEI; XIAOCONG YE; XIAODONG LI,

*Plaintiffs-Appellants*,

v.

CITY OF SAN JOSE, a municipal corporation,

*Defendant-Appellee.*

</td>
<td>

No. 18-16995

D.C. No.
5:18-cv-02024-
LHK

OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted January 9, 2020
Pasadena, California

Filed December 7, 2020

Before:  Paul J. Watford, Mark J. Bennett, and
Kenneth K. Lee, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Bennett

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's dismissal of an action alleging that certain provisions of the City of San Jose's 2017 Ordinance and implementing regulations, pertaining to the City's Apartment Rent Ordinance, violated plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights, as well as the Contracts Clause.

The challenged provisions and regulations require landlords to disclose information about rent stabilized units to the City and condition landlords' ability to increase rents on providing that information.  Specifically, landlords are required to complete an annual registration of their rent stabilized units, re-register whenever a tenant vacates a rent-stabilized unit, and comply with certain requirements when offering to buy out a tenant's lease.

The panel first held that plaintiffs failed to adequately allege that they have a reasonable expectation of privacy in the information contained in the business records at issue.

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel noted that the complaint did not contain any factual allegations distinguishing the information at issue in this case from the similar information landlords already provide to the City in other contexts under regulations whose validity has not been challenged.  Because plaintiffs had not plausibly alleged that the challenged provisions effected a search, their Fourth Amendment claim failed.

The panel held that the ordinance did not work any type of per se taking, for example by a physical invasion or by depriving the property owner of all beneficial use of the property.  Thus, any takings claim had to be judged under the multi-factor test enunciated in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). The panel agreed with the district court that the operative complaint alleged no facts that would plausibly assert a regulatory taking.

The panel determined that plaintiffs failed to state a Contacts Clause claim.  The panel further rejected plaintiffs' equal protection claim and the substantive and procedural due process claims.  Finally, the panel determined that the 2017 Ordinance did not violate the "unconstitutional conditions" doctrine, as enunciated in *Koontz v. St. Johns River Water Management District*, 570 U.S. 595 (2013).

Concurring in part II and concurring in the result, Judge Bennett stated that he would deny plaintiffs' Fourth Amendment claim because the City had conducted no Fourth Amendment search.  The Supreme Court's Fourth Amendment jurisprudence has consistently found that government collection of information effects a search only when it involves some physical intrusion or its functional equivalent.  Judge Bennett fully concurred with the

majority's opinion that the remaining claims also lacked merit.

## COUNSEL

Frank A. Weiser (argued), Los Angeles, California, for Plaintiffs-Appellants.

Malgorzata Laskowska (argued), Senior Deputy City Attorney; Ardell Johnson, Chief Deputy City Attorney; Richard Doyle, City Attorney; Office of the City Attorney, San Jose, California; for Defendant-Appellee.

Barbara J. Parker, City Attorney; Maria Bee, Chief Assistant City Attorney; Erin Bernstein, Supervising Deputy City Attorney; Jaclyn Harris, Neighborhood Law Corps Attorney; Kent Qian, Deputy City Attorney; Office of the City Attorney, Oakland, California; for Amicus Curiae League of California Cities.

Whitty Somvichian and Brandon V. Stracner, Cooley LLP, Palo Alto, California; Nadia Aziz, Law Foundation of Silicon Valley; for Amici Curiae Law Foundation of Silicon Valley and Sacred Heart Community Service.

## OPINION

PER CURIAM:

In 2017, the City of San Jose passed Ordinance 30032 ("Ordinance") to amend the City's Apartment Rent Ordinance, and adopted Resolution 78413 to establish regulations for implementing the Ordinance

("Regulations").  Certain provisions of the Ordinance and Regulations require landlords to disclose information about rent stabilized units to the City and condition landlords' ability to increase rents on providing that information.  These provisions are challenged by individual apartment owners subject to the Ordinance and by the Small Property Owners Association-San Jose, an unincorporated trade association of San Jose landlords.  Plaintiffs sued under 42 U.S.C. § 1983, claiming that the challenged provisions violate their Fourth, Fifth, and Fourteenth Amendment rights, as well as the Contracts Clause.  The district court granted the City's motion to dismiss plaintiffs' first amended complaint without prejudice.  Plaintiffs chose to stand on that complaint and now appeal.  Reviewing the district court's decision de novo, *see Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 923 (9th Cir. 2001), we affirm.

I

Plaintiffs' Fourth Amendment claim is predicated on their theory that the Ordinance and Regulations violate the prohibition against unreasonable searches by requiring landlords to provide certain information to the City through the Director of the Department of Housing.  The claim implicates three different disclosure requirements applicable to rent stabilized units.[1]

First, plaintiffs point to the required annual registration of rent stabilized units under San Jose Municipal Code

---

[1] Subject to a few exceptions, a "rent stabilized unit" is a rental unit "for which a certificate of occupancy was issued on or prior to September 7, 1979 or that was offered or available for rent on or before this date." San Jose Municipal Code § 17.23.167(A).

("SJMC") § 17.23.900. To complete the annual registration, § 4.05 of the Regulations requires landlords to submit to the City, on a City-provided form, the following information: the address of the subject unit; the name and address of each landlord of the unit; the occupancy status and commencement date of the current tenancy; a history of the rent charged for use and occupancy of the unit; the amount charged as a security deposit; the metering status of the unit; the names of all tenants occupying the unit; and any household services provided at the start of the current tenancy. Second, plaintiffs point to the Ordinance's re-registration requirements. When a tenant vacates a rent stabilized unit, the landlord must re-register the unit by submitting a City-approved form that discloses the following information: the address of the unit; the reason the prior tenant vacated the unit, if known; the names of subsequent tenants; the rent charged to subsequent tenants; and a copy of the rental agreement between the landlord and subsequent tenants. SJMC § 17.23.600(C). Finally, plaintiffs point to the Ordinance's buyout requirements. A landlord offering to buy out a tenant's lease must make certain mandatory disclosures to the tenant. When a tenant accepts a landlord's buyout offer, the landlord must provide the City with executed copies of the agreement and disclosure form. SJMC § 17.23.700.

Landlords violating the Ordinance face civil penalties and misdemeanor criminal charges punishable by up to six months in jail. SJMC § 17.23.500(A).[2] Additionally,

---

[2] Section 17.23.500(A) lists the civil penalties and provides that violators face "all other remedies provided by law, including those set forth in Chapter 1.08 of Title 1 of the San Jose Municipal Code . . . ." Chapter 1.08 in turn provides that violations of any City Ordinance can

landlords who fail to comply with the registration or re-registration requirements may not increase rent for unregistered units. SJMC § 17.23.310. Landlords who charge fees or rents higher than what is allowed by the Ordinance or Regulations are guilty of a misdemeanor. SJMC § 17.23.530.

The first question raised by plaintiffs' Fourth Amendment claim is whether the challenged provisions effect a "search." A Fourth Amendment search occurs when the government either physically intrudes upon "persons, houses, papers, [or] effects" or invades "a person's 'reasonable expectation of privacy'" in one of the constitutionally enumerated areas. *United States v. Jones*, 565 U.S. 400, 405–06 (2012) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967)). With respect to searches of "papers," we need not decide whether the Fourth Amendment is implicated only by a physical inspection of the documents themselves. Even if the Fourth Amendment is implicated by certain non-physical intrusions, in that context the plaintiff must have a reasonable expectation of privacy in the contents of the documents before the government's conduct can be deemed a Fourth Amendment "search." And here, as the district court held, plaintiffs failed to adequately allege that they have a reasonable expectation of privacy in the information contained in the business records at issue.[3]

---

be a misdemeanor punishable by fine, imprisonment of up to six months, or both.

[3] For the first time on appeal, plaintiffs also seek to ground their Fourth Amendment claim on a "property interest" in their business records, derived from California Civil Code § 1947.7(g) and independent of their privacy interests. Because this argument was not raised in the

Plaintiffs' sole substantive allegation regarding privacy is that the information they must disclose under the challenged provisions "constitute plaintiffs' private business records that is not found in the public domain." The district court found this lone allegation, without additional factual matter, insufficient to establish a reasonable expectation of privacy in the information subject to disclosure. The court noted that San Jose landlords are already required to provide similar information about rent stabilized units to the City by other regulations not challenged here. As one example, when landlords petition to raise the rent by more than is ordinarily permitted, they must provide financial information showing their net operating income in both a "base year" (usually 2014) and the current year. SJMC §§ 17.23.800–870. This information must suffice to show (1) income from all sources, including rent, laundry, and other services, as well as interest on tenant deposits; and (2) expenses, including fees, taxes, utilities, insurance, maintenance, managerial and administrative costs, and legal fees. Landlords can establish these items using a variety of evidence, including "receipts, cancelled checks, and detailed invoices" (which the Regulations consider "the best documentation"), as well as tax returns, ledgers, and insurance claims. Regulations § 8.02.02. As another example, when landlords petition to pass through to tenants the cost of capital improvements, they must provide the number of units affected; the occupancy status and rent charged for each unit; and detailed records concerning the improvement itself, including "invoices and proof of payment" and "[a] copy of the building permit(s) and final inspection(s)." Regulations § 9.02.1. Although the details differ, the information that landlords must submit under

district court, we decline to address it. *See In re Mortgage Electronic Registration Systems, Inc.*, 754 F.3d 772, 780 (9th Cir. 2014).

these regulations overlaps to a significant degree with the information landlords must disclose under the challenged provisions.

Confronted with this overlap, the district court concluded that plaintiffs' lone allegation concerning privacy does not "explain how the information implicated by the Ordinance disclosure requirements differs meaningfully from" the information landlords already disclose in other contexts. The court thus dismissed plaintiffs' Fourth Amendment claim with leave to amend. As noted, however, plaintiffs did not amend their complaint, and they rely on the same lone allegation on appeal.

We agree with the district court that plaintiffs' complaint fails to allege facts plausibly suggesting that they have a reasonable expectation of privacy in the information that must be disclosed under the challenged provisions. The complaint does not contain any factual allegations distinguishing the information at issue in this case from the similar information landlords already provide to the City in other contexts under regulations whose validity has not been challenged.

The district court's ruling is supported by our recent decision in *San Francisco Apartment Association v. City and County of San Francisco*, 881 F.3d 1169 (9th Cir. 2018). In that case, landlords in San Francisco argued that a similar ordinance, which required landlords to provide tenant buyout agreements to the city for inclusion in a publicly searchable database, violated their right to privacy under the California Constitution. *See id.* at 1173–75. Affirming the district court's grant of judgment on the pleadings, we held that the landlords had no "reasonable expectation of privacy in the information" because they "offer no explanation why" the information at issue "is more sensitive or private than

other financial information routinely submitted to the government and made publicly available" in other contexts. *Id.* at 1178; *see also In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 604 n.7 (9th Cir. 2020) (treating as comparable the reasonable expectation of privacy under the California Constitution and the Fourth Amendment). The district court applied the same rule here: As in *San Francisco Apartment Association*, plaintiffs in this case offered no factual allegations plausibly suggesting that they maintain a reasonable expectation of privacy in information that, generally speaking, they already disclose to the City in other contexts.[4]

Our decision in *Patel v. City of Los Angeles*, 738 F.3d 1058 (9th Cir. 2013) (en banc), *aff'd*, 576 U.S. 409 (2015), on which plaintiffs rely, is not to the contrary. The ordinance challenged in *Patel* permitted police officers to perform warrantless, on-demand inspections of hotel owners' guest registries. *Id.* at 1061. But in that case no one contested that the information contained in the guest registries was private, for it was undisputed that hotel owners "do not ordinarily disclose, and are not expected to disclose, the kind of commercially sensitive information contained in the [guest registries]." *Id.* at 1062. Because there was no indication in

---

[4] It bears noting that plaintiffs' allegations support only a facial challenge to the regulations at issue; nothing in the complaint supports a claim that the regulations are invalid as applied to any of the individual plaintiffs. Thus, the complaint does not allege, for example, that individual apartment owners have not in the past petitioned the City to raise rent by more than the ordinary amount, or to pass through the cost of capital improvements. Nor does the complaint allege that, even if individual apartment owners have petitioned the City for those purposes, the information demanded by those petitions does not actually overlap with the information that must be disclosed under the challenged provisions.

*Patel* that the hotel owners provided their guest registries or similar information to the government in other situations, the plaintiffs did not need to allege additional facts concerning the private nature of the information contained in the registries.  Here we confront the opposite situation.  As a result, for the reasons discussed above, additional factual allegations *were* necessary before the district court could plausibly infer that plaintiffs maintained a reasonable expectation of privacy in the information contained in the business records at issue.  And despite being afforded an opportunity to allege additional facts in support of their claims, plaintiffs declined to do so.

As we hold that plaintiffs have not plausibly alleged that the challenged provisions effect a search, their Fourth Amendment claim fails.

## II

Plaintiffs' remaining claims also lack merit.

### A.  Fifth Amendment Takings Claim

Plaintiffs contend the Ordinance effects a per se taking of private property, in violation of the Fifth Amendment. But the Ordinance does not work any type of per se taking, for example by a physical invasion, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), or by depriving the property owner of all beneficial use of the property, *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992).  Thus, any takings claim must be judged under the multi-factor test enunciated in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). These factors include (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation [interferes] with distinct investment-backed

expectations," and (3) "the character of the government action." *Id.* at 124.

Plaintiffs complain of a regulatory taking on appeal, but as the district court correctly found, the operative complaint alleges no facts that would plausibly assert a regulatory taking. Indeed, the only allegation even arguably relevant to a regulatory taking claim is that landlords "cannot increase rents on their tenants" if they fail to comply with the Ordinance and Regulations. But "when buying a piece of property, one cannot reasonably expect that property to be free of government regulation such as zoning, tax assessments, or . . . rent control." *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1091 (9th Cir. 2015). Plaintiffs do not raise a colorable Fifth Amendment takings claim.

## B. Contracts Clause Claim

"The threshold issue [in a Contracts Clause analysis] is whether the state law has 'operated as a substantial impairment of a contractual relationship.' In answering that question, the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018) (citation omitted). As the district court correctly found, "Plaintiffs include only the vague allegation that the Ordinance and Regulations affect plaintiffs' contracts with their tenants, but plaintiffs do not specify how the Ordinance disclosure requirements affect

those contracts."**5** Plaintiffs have not stated a Contracts Clause claim.

## C.  Equal Protection

We review plaintiffs' equal protection claim under the rational basis test, as they are not members of a suspect class. *Dandridge v. Williams*, 397 U.S. 471, 485 (1970).**6** Plaintiffs allege no facts that even arguably show the Ordinance's various distinctions (including between unit types) are irrational, nor do they argue this on appeal.  That

---

**5** For the first time on appeal, plaintiffs specifically argue that the Ordinance retroactively voids any pass-through contracts.  Not only did plaintiffs fail to raise this argument below, but they do not point to any allegation in their complaint to support it.  Again, we see no reason to depart from the general rule that we do not consider issues not raised below.  We also note that plaintiffs requested leave to amend "to specify the contractual relationships at issue that give rise to the claim."  But after the district court granted leave to amend, plaintiffs chose not to amend.

**6** Plaintiffs claim strict scrutiny applies but offer no reasoned argument that we can discern in support of that proposition.  Plaintiffs appear to assert that their equal protection claim is subsumed by their Fourth Amendment claim, which therefore requires us to apply strict scrutiny to their now subsumed equal protection claim.  Plaintiffs' reliance for this proposition on a footnote in *Orin v. Barclay*, 272 F.3d 1207 (9th Cir. 2001), is severely misplaced.  We treated the equal protection claim as subsumed in *Orin* because the plaintiff's equal protection claim "appear[ed] to be . . . a First Amendment claim dressed in equal protection clothing" and because "the substantive guarantees of the [First] Amendment serve as the strongest protection against the limitation of these rights" for those "class[es] of persons under the equal protection guarantee."  *Id.* at 1213 n.3.  We did not otherwise analyze an Equal Protection claim, let alone state that strict scrutiny must be applied to an Equal Protection claim made by individuals that are not members of a suspect class.  Plaintiffs make no argument that "intermediate scrutiny" applies.

alone is reason to reject their equal protection claim.  That said, we agree with the district court that the distinctions drawn by the Ordinance appear easily to survive rational basis review.  For example, the set of units covered by the Apartment Rent Ordinance was not expanded to include duplexes because the City would need to expend significant resources to transition thousands of new owners into the program. *See Woods v. Miller Co.*, 333 U.S. 138, 145 (1948) ("[A legislative body] need not control all rents or none.  It can select those areas or those classes of property where the need seems the greatest."); *see also Equity Lifestyle Properties, Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1195 (9th Cir. 2008) (affirming dismissal of an equal protection challenge where the regulation of mobile home park rents satisfied rational basis review as the regulation was motivated by "distinguishing characteristics relevant to interests the State has the authority to implement" (citation omitted)).

### D.  Substantive and Procedural Due Process

Plaintiffs assert both substantive and procedural due process claims.[7]  But both require, as a threshold matter, that plaintiffs show they were deprived of a "constitutionally protected life, liberty or property interest."  *Shanks v.*

---

[7] For the first time on appeal, plaintiffs state that their procedural due process claim relates to how hearing officers are selected, as described in § 11.01.1 of the Regulations.  While plaintiffs' complaint and first amended complaint mention "procedural due process" in passing, neither alleges any facts relating to the administrative hearing process or the selection of hearing officers, and neither references § 11.01.1.  Plaintiffs' opposition to the City's motion to dismiss does not even respond to the City's argument that plaintiffs failed to state a procedural due process claim.  Once again, as plaintiffs did not raise this argument below, we decline to consider it here.

*Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008) (discussing substantive due process); *id.* at 1090 (stating that to be entitled to relief under a procedural due process claim, a plaintiff must establish (1) a protected liberty or property interest, (2) the governmental deprivation of that interest, and (3) a "lack of process"); *see also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972) (recognizing that the requirements of procedural due process apply only to those interests encompassed by the Fourteenth Amendment and that "the range of interests protected . . . is not infinite").

We agree with the district court that the first amended complaint does not articulate how the Ordinance and Regulations harm plaintiffs' own liberty and property interests.[8] Plaintiffs argue that the Ordinance and Regulations infringe on their tenants' privacy rights, thus forcing plaintiffs to choose between "disclosing the tenants' personal information violating their due process rights (and possibly being sued)" or not complying with the Ordinance and "suffering severe . . . sanctions." This argument does not identify any harm to plaintiffs' own liberty or property interests. And we reject plaintiffs' claim of a substantive due process violation flowing from the alleged "unconstitutional conditions." As discussed below, there can be no "unconstitutional conditions" when there is no unconstitutionality.

---

[8] For the first time on appeal, plaintiffs assert that their own property rights are implicated because their business records are private and protected by Article 1, § 1 of the California Constitution and California Civil Code § 1947.7(g). Because plaintiffs did not make this claim in either their complaint or first amended complaint and did not raise it in opposition to the City's motion to dismiss, we do not consider it here.

### E.  Unconstitutional Conditions

Finally, plaintiffs contend that the Ordinance violates the "unconstitutional conditions" doctrine, as enunciated in *Koontz v. St. Johns River Water Management District*, 570 U.S. 595 (2013).  "A predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing."  *Id.* at 612.  But whether we view the Ordinance as pressuring or ordering, plaintiffs' claim fails, as plaintiffs have shown no unconstitutionality.  The Ordinance's requirements violate no Fourth, Fifth, or Fourteenth Amendment rights of plaintiffs, and thus the *pressure* the City exerts through sanctions for non-compliance is constitutionally irrelevant.

**AFFIRMED.**

---

BENNETT, Circuit Judge, concurring in part[1] and concurring in the result:

The Fourth Amendment to the Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the

---

[1] I fully concur in Part II of the majority's opinion.

place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The Ordinance challenged here requires plaintiffs to record and disclose information about property leasing to the City of San Jose.  The City neither enters plaintiffs' houses or places of business to obtain the information, nor does it seize, intercept, or surreptitiously obtain any of plaintiffs' papers or effects.  The City procures no warrants.  Instead, the City provides forms for the plaintiffs to fill out and return.  Like regulators throughout the country at every level of government, the City penalizes those who fail to provide the information it requires. Plaintiffs claim the Ordinance violates the Fourth Amendment.  Like the majority, I agree that it doesn't.  But while the majority relies on the plaintiffs' lack of a reasonable expectation of privacy in the information divulged to the City,[2] I would deny the plaintiffs' Fourth Amendment claim for a far more fundamental reason—the City has conducted no Fourth Amendment search.[3]

In *Katz v. United States*, 389 U.S. 347 (1967), the Supreme Court famously held that "the Fourth Amendment protects people, not places." *Id.* at 351.  And the Court later adopted Justice Harlan's formulation:  "[A] person has a constitutionally protected reasonable expectation of privacy; [and] electronic as well as physical intrusion into a place that is in this sense private may constitute a violation of the Fourth Amendment . . . ." *Id.* at 360 (Harlan, J., concurring); *see Terry v. Ohio*, 392 U.S. 1, 9 (1968).  *Katz*, of course,

---

[2] I do not expressly disagree with the majority as to its "reasonable expectation of privacy" analysis, because I do not reach the question.

[3] Plaintiffs do not argue the City "seized" anything.

involved a physical intrusion by government—the placement of a hidden listening device on a phone booth. 389 U.S. at 348.

Since *Katz*, the Court has afforded Fourth Amendment protection in a variety of situations, like a government agent's physical manipulation of a carry-on bag placed in an overhead compartment on a bus, *Bond v. United States*, 529 U.S. 334, 338–39 (2000), or the government obtaining an individual's cell-site location information through court orders obtained under the Stored Communications Act, *Carpenter v. United States*, 138 S. Ct. 2206, 2212, 2217 (2018). Part of the Court's analysis in these cases involved a person's "reasonable expectation of privacy." But that analysis comes into play only if there *is* a search or seizure, like the *Katz* concealed listening device, the *Bond* "tactile inspection," or the *Carpenter* court order. Though the Court has made clear in recent years that Fourth Amendment jurisprudence is no longer tied to a trespass-based analysis, *United States v. Jones*, 565 U.S. 400, 405 (2012), nothing in the Court's jurisprudence suggests reading the necessity of an actual search or seizure out of the Fourth Amendment. An individual may have the most reasonable expectation of privacy in certain information, but the Fourth Amendment is not implicated until the government collects that information through a search. *See id.* at 408 n.5 ("[T]he obtaining of information is not alone a search unless it is achieved by . . . a trespass or invasion of privacy.").

Governments (federal, state, and local) regularly collect information from citizens. *See Whalen v. Roe*, 429 U.S. 589, 605 (1977). These demands for information can be for statistical purposes, in relation to the collection of taxes and fees, to help determine whether government should or must provide a requested benefit, to make certain that those who

hold licenses or permits are adhering to their terms, to monitor and maintain public health, or as part of a regulatory structure. These are only a few examples. Often the information is confidential, nonpublic, and not known or available to the government otherwise. And governments regularly impose sanctions for failing to transmit the information (like losing a benefit or facing a penalty). Other constitutional provisions regulate these types of information demands,[4] but the Fourth Amendment does not. Though the Fourth Amendment has developed since *Katz*, nothing in the Court's jurisprudence is at odds with *Katz*'s reminder that "the Fourth Amendment cannot be translated into a general constitutional 'right to privacy.'" 389 U.S. at 350; *see id.* ("Other provisions of the Constitution protect personal privacy from other forms of governmental invasion.").

Rather, the Supreme Court's Fourth Amendment jurisprudence has consistently found that government collection of information effects a search only when it involves some physical intrusion or its functional equivalent. *Cf. Bond*, 529 U.S. at 337 ("Physically invasive inspection is simply more intrusive than purely visual inspection."). Trespass on private property can obviously constitute a search. *Jones*, 565 U.S. at 404–05. Newer investigatory techniques, if they function like physical intrusions, can also constitute searches. So, in *Katz*, the government effected a search when it placed a hidden listening device that electronically intruded into a closed phone booth to overhear

---

[4] The Due Process Clauses of the Fifth and Fourteenth Amendments can be implicated by government regulation. *See, e.g.*, *Whalen*, 429 U.S. at 598–604. Likewise, the First Amendment's associational freedom can be burdened by government collection of information. *E.g.*, *Shelton v. Tucker*, 364 U.S. 479, 480, 487–88 (1960) (finding unconstitutional an Arkansas law requiring public schoolteachers to submit an affidavit listing their organizational associations).

private conversations.  389 U.S. at 353; *id.* at 362 (Harlan, J., concurring).  And in *Kyllo v. United States*, 533 U.S. 27 (2001), the government's collection of information using a sense-enhancing device "that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion," also constituted a search.  *Id.* at 40.  Such a result "assures preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted."  *Id.* at 34.  As Justice Scalia, writing for the Court, specifically noted:

> When the Fourth Amendment was adopted, as now, to "search" meant "[t]o look over or through for the purpose of finding something; to explore; to examine by inspection; as, to *search* the house for a book; to *search* the wood for a thief."

*Id.* at 32 n.1 (quoting N. Webster, An American Dictionary of the English Language 66 (1828) (reprint 6th ed. 1989)).

The government may also conduct a constructive search by collecting information through an "orderly taking under compulsion of process."  *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *Hale v. Henkel*, 201 U.S. 43, 76 (1906) ("While a search ordinarily implies a quest by an officer of the law . . . the substance of the offense is the compulsory production of private papers, whether under a search warrant or a *subpoena duces tecum* . . . .").  In this context, it is the government process effecting access to the protected papers and records that implicates the Fourth Amendment.  Court orders directing the production of information fall in this category of searches, *Carpenter*, 138 S. Ct. at 2217; *Boyd v. United States*, 116 U.S. 616, 624 (1886), as do administrative subpoenas, *Okla. Press Publ'g*

*Co. v. Walling*, 327 U.S. 186, 209–10 (1946). But no Supreme Court case has found a search based on a requirement that a person transmit information as part of a regulatory process, even if there are penalties for noncompliance, and even if the person has a reasonable expectation of privacy in the requested information.

Plaintiffs rely on our en banc decision in *Patel v. City of Los Angeles (Patel I)*, 738 F.3d 1058 (9th Cir. 2013) (en banc), *aff'd*, 576 U.S. 409 (2015), discussing administrative searches. But *Patel I* serves only to confirm the Fourth Amendment's requirement of a physical intrusion or its equivalent. The challenged ordinance in *Patel I* "authorize[d] police officers to inspect hotel guest records at any time without consent or a search warrant." *Id.* at 1061. Crucial to our application of the Fourth Amendment to the warrantless inspection scheme was the method used to obtain the record information:

> A police officer's non-consensual inspection of hotel guest records plainly constitutes a "search" under either the property-based approach of *Jones* or the privacy-based approach of *Katz*. Such inspections involve both a physical intrusion upon the hotel's private papers and an invasion of the hotel's protected privacy interest in those papers for the purpose of obtaining information. Whether the officers rifle through the records in paper form, or view the records on a computer screen, they are doing so to obtain the information contained in the records.

*Id.* at 1062 (citation omitted). Inspection of the records intruded upon both the property rights and the privacy

interests of the hotel, since the hotel's property rights in the records gave rise to its expectation of privacy. *Id.* at 1061. Thus, there was a search *only* because the ordinance authorized police officers to inspect, on demand, records physically kept at hotels.

The Supreme Court affirmed our *Patel I* decision and expressed no disagreement with our search analysis. *See City of Los Angeles v. Patel (Patel II)*, 576 U.S. 409, 412 (2015). As the Supreme Court observed: "The en banc court first determined that a police officer's nonconsensual inspection of hotel records under [the ordinance] is a Fourth Amendment search because the business records . . . are the hotel's private property and the hotel therefore has the right to exclude others from prying into their contents." *Id.* at 414 (internal quotation marks and brackets omitted). Further, the Supreme Court's finding of a Fourth Amendment violation turned on the ordinance's lack of an opportunity for judicial review prior to inspections. *Id.* at 421. Logically, the inverse also holds true—in the absence of inspections, there is no need for any precompliance judicial review, and the Fourth Amendment is no longer implicated. Without the statutorily authorized onsite inspection demands, there would have been no search in *Patel I*.

By contrast, the Ordinance here requires landlords to disclose information to the City's Department of Housing as part of a regulatory process. There is no inspection of any kind. Nothing in the Supreme Court's opinion in *Patel II* (or our en banc opinion in *Patel I*) suggests that there would have been a search had there been no physical inspection of private business records and, instead, a statutory requirement that hotels transmit information to the city under a regulatory scheme.

But in the majority's view, the Ordinance does not violate the Fourth Amendment *because* there was no reasonable expectation of privacy in the information sought:

> Even if the Fourth Amendment is implicated by certain non-physical intrusions, in that context the plaintiff must have a reasonable expectation of privacy in the contents of the documents before the government's conduct can be deemed a Fourth Amendment "search." And here, as the district court held, plaintiffs failed to adequately allege that they have a reasonable expectation of privacy in the information contained in the business records at issue.

Majority Opinion at 7. First asking, as the majority does here, whether plaintiffs can show that they possess a reasonable expectation of privacy in the disclosed information puts the cart before the horse in a manner untethered from the language of the Fourth Amendment. *See Entick v. Carrington*, 19 How. St. Tr. 1029, 1066, 95 Eng. Rep. 807 (1765) ("[T]he eye cannot by the laws of England be guilty of a trespass, yet where private papers are removed and carried away, the secret nature of those goods will be an aggravation of the trespass."). What *first* determines whether government action that obtains information implicates the Fourth Amendment is not the nature of the information requested; it is the method and manner of the collection.[5] *Cf. Grady v. North Carolina*, 575 U.S. 306, 310

---

[5] I acknowledge that the Supreme Court in *Minnesota v. Carter*, 525 U.S. 83 (1998), elected to settle the open legal question of whether a temporary visitor to a home for business reasons could legitimately expect privacy and thus invoke the Fourth Amendment, without first

(2015) ("The State's program is plainly designed to obtain information. And since it does so by physically intruding on a subject's body, it effects a Fourth Amendment search.").

Though the majority reaches the correct ultimate result, the harm in its approach is manifest. As noted above, government requires its citizens to provide information all the time. Sometimes it is part of a regulated activity scheme, like property rental. Sometimes it is part of obtaining a service or benefit (a driver's license, a business license, a title registration, a passport). Sometimes it is just part of everyday life. For most of its actions, the government, if challenged, need show only that its activities are "rationally related to legitimate government interests." *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997). But if other courts follow the majority's approach here, anyone who must provide information to government can lodge a Fourth Amendment challenge to the requirement based on their "reasonable expectation of privacy" in the information sought. Allowing a Fourth Amendment claim to proceed *with* such allegations of privacy, but with no plausible

---

determining whether the police observation into the home in that case was a search. *Id.* at 91. In *Carter*, there were strong prudential reasons for deciding the temporary visitor issue first—that question was necessary to address the lower court's incorrect standing analysis, *id.* at 87, and it had broad ramifications for who could bring a Fourth Amendment claim. Here, the majority's decision to analyze the plaintiffs' expectations of privacy lacks any such justification. We should not set the stage for future Fourth Amendment challenges based on information requests, or what the majority describes as "non-physical intrusions." Rather, the prudent course would be to answer the seminal question of whether an information request without inspection effects a search, and to answer that seminal question consistent with the text of the Fourth Amendment. In essence, the majority does the reverse of what the Court did in *Carter*—leaving open a door that should be shut, rather than appropriately shutting it.

allegation of an actual Fourth Amendment search, will subject government at every level to inappropriate judicial scrutiny of its actions—especially when it "conditions" benefits on the reporting of information.[6] And this, contrary to the very teachings of *Katz*, *will* cause the Fourth Amendment to be translated into a general constitutional right to privacy.

As there was no Fourth Amendment search here, irrespective of whether plaintiffs had an "actual (subjective) expectation of privacy . . . that society is prepared to recognize as 'reasonable,'" *Katz*, 389 U.S. at 361 (Harlan, J., concurring), we should have rejected plaintiffs' Fourth Amendment claim on that ground. By failing to do so, we have saddled both government and judges with a constitutionally inappropriate burden. For that reason, I concur only in the result of Part I of the majority's opinion.

---

[6] Keep in mind that part of plaintiffs' claim here was based on "unconstitutional conditions." The majority rightly rejected the "unconstitutional conditions" claim, but its Fourth Amendment analysis continues to allow "unconstitutional conditions" challenges to any benefit conditioned on reporting information, so long as a plaintiff can assert some expectation of privacy in the information.