**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PETER STAVRIANOUDAKIS;
KATHERINE
STAVRIANOUDAKIS; SCOTT
TIMMONS; ERIC ARIYOSHI;
AMERICAN FALCONRY
CONSERVANCY,

*Plaintiffs-Appellants*,

v.

UNITED STATES FISH AND
WILDLIFE SERVICE; CHARLTON
H. BONHAM, in his official capacity
as Director of California Department
of Fish and Wildlife; JIM KURTH, in
his official capacity as Deputy
Director Exercising the Authority of
the Director of California Department
of Fish and Wildlife; MARTHA
WILLIAMS,

*Defendants-Appellees*.

No. 22-16788

D.C. No.
1:18-cv-01505-
JLT-BAM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Jennifer L. Thurston, District Judge, Presiding

Argued and Submitted November 13, 2023
San Francisco, California

Filed July 24, 2024

Before: Sidney R. Thomas, Danielle J. Forrest, and
Salvador Mendoza, Jr., Circuit Judges.

Opinion by Judge Forrest;
Partial Concurrence and Partial Dissent by Judge S.R.
Thomas

## SUMMARY[*]

### Article III Standing

In an action brought by individual falconers and the American Falcon Conservancy alleging that state and federal regulations impose unconstitutional conditions on their right to obtain a falconry license and that the unannounced, warrantless inspections that they must consent to violate the Fourth Amendment and the Administrative Procedures Act, the panel: (1) reversed the district court's dismissal for lack of standing of plaintiffs' unconstitutional-conditions claim against the California Department of Fish and Wildlife (CDFW); and (2) affirmed the district court's dismissal for lack of standing of their remaining claims against CDFW and the U.S. Fish and Wildlife Service (FWS).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The falconers challenged the requirement, included in both the state and federal regulations, that they submit to unannounced, warrantless inspections as a condition of obtaining a falconry license. As to their standing on their claim against the CDFW, the panel noted that under the well-settled doctrine of "unconstitutional conditions," the government may not require a person to give up a constitutional right in exchange for a discretionary benefit. California conditions falconry licenses on applicants' annual certification that they agree to unannounced warrantless inspections. The panel held that simply agreeing to submit to those inspections, in the absence of an actual inspection, amounted to the relinquishment of Fourth Amendment rights. Therefore, the falconers' alleged injury in fact is the forced choice. In addition to injury, the two remaining standing requirements were also satisfied. The panel further held that because the falconers sufficiently alleged an injury in fact, constitutional ripeness was also satisfied. Accordingly, the panel reversed the district court's dismissal of the Falconers' unconstitutional-conditions claim against CDFW for lack of standing.

The panel held that the falconers' unconstitutional-conditions claim asserted against FWS was unripe. Because FWS has delegated falconry licensing authority to California, a lengthy chain of events would have to take place before the falconers could show a remediable impact traceable to FWS. The panel concluded that the connection between the falconers' asserted injury and FWS is too attenuated and hypothetical at this point to support federal question jurisdiction over the falconers' unconstitutional-conditions claim against FWS.

The falconers also contended that the federal and California authorization of unannounced inspections

violates the Fourth Amendment both facially and as-applied because they authorize unreasonable warrantless searches of the falconers' private home, curtilage, and other property. The panel held that the falconers' direct challenge failed because they have not alleged that they were subjected to warrantless inspection under the challenged regulations. Because the falconers sought declaratory and injunctive relief, the panel considered whether they had Article III standing to seek prospective relief. The panel held that the falconers failed to allege any facts about the frequency or volume of unannounced inspections that California regulators undertake, but relied primarily on the existence of the regulation authorizing unannounced inspections. The panel concluded that the falconers had not sufficiently demonstrated injury in fact as to the unannounced-inspection claim. Because the falconers lacked standing to directly challenge the authorization of unannounced inspections, they also lacked standing to challenge this authorization under the Administrative Procedures Act.

The American Falcon Conservancy also asserted an unconstitutional-conditions claim and an unannounced-inspection claim on behalf of their members. Like the individual plaintiffs, the panel concluded that the American Falcon Conservancy met the associational standing requirements for its unconstitutional-conditions claim but not for its unannounced-inspection claim.

Concurring in part and dissenting in part, Judge S.R. Thomas agreed that the district court properly dismissed the falconers' claim that the regulations violated the Fourth Amendment because they had not been subjected to an inspection under the current regulations and could not establish that a future inspection was imminent. He disagreed that the falconers had standing to challenge the

state regulations under the unconstitutional-conditions doctrine, and would affirm the district court's dismissal of all of the falconers' remaining claims.

## COUNSEL

Daniel T. Woislaw (argued), Pacific Legal Foundation, Arlington, Virginia; James M. Manley, Pacific Legal Foundation, Phoenix, Arizona; Lawrence G. Salzman, Pacific Legal Foundation, Sacramento, California; for Plaintiffs-Appellants.

John D. Butterfield (argued), Deputy Assistant Attorney General; Nhu Q. Nguyen and Courtney S. Covington, Deputy Attorneys General; Russell B. Hildreth, Supervising Deputy Attorney General; Robert W. Byrne, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General, Sacramento, California; Michael T. Gray (argued) and Daniel Halainen, United States Department of Justice, Environment & Natural Resources Division, Todd Kim Assistant Attorney General; United States Department of Justice, Washington, D.C.; Philip Kline, United States Department of the Interior, Washington, D.C.; Brodie M. Butland, Assistant United States Attorney, Office of the United States Attorney, Fresno, California;  for Defendants-Appellees.

## OPINION

FORREST, Circuit Judge:

The question presented is whether individual falconers and the American Falcon Conservancy (AFC) have standing to challenge the constitutionality of the California Department of Fish and Wildlife's (CDFW) and United States Fish and Wildlife Service's (FWS) regulations authorizing unannounced, warrantless inspections of falconers' property and records and requiring falconers to agree to such inspections as a condition of obtaining a falconry license.

Plaintiffs assert that the challenged state and federal regulations impose unconstitutional conditions on their right to obtain a falconry license and that the unannounced, warrantless inspections that they must consent to violate the Fourth Amendment and the Administrative Procedures Act (APA). The district court dismissed Plaintiffs' Fourth Amendment-based claims for lack of Article III standing, concluding that Plaintiffs failed to demonstrate injury in fact because they have not been subjected to a warrantless inspection under the challenged regulations and have not shown that future warrantless inspections are certainly impending. We reverse the district court's dismissal of Plaintiffs' unconstitutional-conditions claims brought against CDFW and affirm as to the dismissal of their remaining claims.

## I.  BACKGROUND

### A.  Falconry Regulation

"Falconry is caring for and training raptors for pursuit of wild game, and hunting wild game with raptors." 50 C.F.R.

§ 21.6. Falconry is governed by the federal Migratory Bird Treaty Act and its implementing regulations, which impose a detailed regulatory scheme that governs the possession and trade of certain birds of prey. 16 U.S.C. § 704(a); 50 C.F.R § 10.13 (listing regulated species); 50 C.F.R. § 21.82(a)–(f). Under this scheme, falconers must obtain a permit to lawfully engage in falconry. 50 C.F.R. § 21.82(c).

Two provisions of the federal regulatory scheme are at issue here. The first authorizes regulators to conduct unannounced inspections of "[f]alconry equipment and records . . . in the presence of the permittee during business hours on any day of the week by State, tribal, or territorial officials." *Id.* § 21.82(d)(9). The second requires falconry permit applicants to submit "a signed and dated statement showing that [they] agree that the falconry facilities and raptors may be inspected without advance notice by State, tribal (if applicable), or territorial authorities at any reasonable time of day" so long as the permitee is present. *Id.* § 21.82(d)(2)(ii).

Originally, there were parallel federal and state permitting systems. States could either elect to prohibit falconry or to allow it under regulations that met minimum federal standards. *Id.* § 21.82(b)(1). Once the federal government certified that a state's regulatory scheme satisfied federal standards, it "terminate[d] Federal falconry permitting" in that state. *Id.* § 21.82(b)(3). In 2008, FWS abandoned the parallel permitting system. Recognizing that "[e]very State government except that of Hawaii has now implemented regulations governing falconry," FWS discontinued federal permitting starting in 2014. Migratory Bird Permits, 73 Fed. Reg. 59,448, 59,448 (Oct. 8, 2008). Since 2014, "a State, tribal, or territorial falconry permit" is all that is required to lawfully practice falconry. *Id.*; *see also*

Migratory Bird Permits; Delegating Falconry Permitting Authority to 17 States, 78 Fed. Reg. 72,830, 72,830–33 (Dec. 4, 2013) (delegating falconry permitting to California).

Also at issue in this case are California's falconry regulations. California has adopted a licensing scheme that requires falconers to renew their licenses annually. Cal. Code Regs. tit. 14, § 670(a)(1). Consistent with federal requirements, California authorizes unannounced inspections: CDFW "may conduct unannounced visits to inspect facilities, equipment, or raptors possessed by the licensee, and may enter the facilities of any licensee when the licensee is present during a reasonable time of the day and on any day of the week" and "may also inspect, audit, or copy any permit, license, book, or other record required to be kept by the licensee under these regulations at any time." Cal. Code Regs. tit. 14, § 670(j)(3)(A). To obtain a California falconry license, the applicant must certify in writing:

> I understand that my facilities, equipment, or raptors are subject to unannounced inspection pursuant to subsection 670(j), Title 14, of the California Code of Regulations. I certify that I have read, understand, and agree to abide by, all conditions of this license, the applicable provisions of the Fish and Game Code, and the regulations promulgated thereto.

*Id.* § 670(e)(2)(D). The California regulations provide that CDFW "shall deny the issuance of a license or renewal of an existing license if the applicant or licensee fails to submit all

required items." *Id.* § 670(e)(8)(D); *see also id.* § 679(e)(8)(B).

## B. Plaintiffs' Falconry Activities

Individual Plaintiffs Eric Ariyoshi, Scott Timmons, and Peter Stavrianoudakis (collectively, the Falconers) are California residents who have been licensed falconers for decades. Plaintiff Katherine Stavrianoudakis is not a falconer, but she is married to and lives with Peter Stavrianoudakis.

Ariyoshi's falcon lives in an unrestricted mews[1] 30 feet from his home. Timmons's three birds live in mews and other structures directly adjacent to his home. Peter Stavrianoudakis's falcon lives primarily in his and his wife's bedroom, although the bird occasionally is weathered in a protective enclosure approximately 20 feet from the home. The Falconers all comply with California's falconry regulations and renew their licenses annually.

AFC is an organization "dedicated to protecting and preserving the practice of falconry, and protecting falconers' rights." AFC has approximately 100 members nationwide, all of whom are subject to federal and state falconry regulations. The Falconers are AFC members.

In their joint complaint, the individual Plaintiffs and AFC describe six unannounced inspections that state and federal law enforcement agents have conducted. Timmons alleges that in 1992, when he was in college, CDFW officers approached him at his mother's property in Thousand Oaks, California to ask whether he possessed a particular red-tailed

---

[1] A "mews" is an "indoor" facility for housing raptors. Cal. Code Regs. tit. 14, § 670(j)(1)(B).

hawk. Timmons told them the hawk had flown away, which the officers already knew because they had the hawk in their possession. Peter Stavrianoudakis alleges that sometime around 1983, his home was searched, and he was arrested, all without a warrant, "by armed members of [CDFW] related to his lawful activities as a non-resident falconer in Nevada."

AFC alleges that armed FWS agents conducted warrantless searches of the homes and property of two of its Washington-state members—Stephen Layman and Lydia Ash (Washington members)—in 2004 and 2009, respectively. AFC also alleges that armed CDFW agents conducted warrantless searches of the homes and property of two of its California members—Fred Seaman and Leonardo Velazquez (California members)—in 2016 and 2017, respectively.

## C. District Court Proceedings

Plaintiffs' first amended complaint alleged that federal and state falconry regulations violate the First, Fourth, and Fourteenth Amendments of the United States Constitution, as well as the APA. The district court dismissed with leave to amend the Fourth Amendment claims, and partially dismissed the APA claim, all for lack of standing.

Plaintiffs filed a second amended complaint, asserting four claims based on the Fourth Amendment. Count I alleges that California's requirement that license applicants agree to unannounced inspections is a facial and as-applied violation of the Fourth Amendment (unconstitutional-conditions claim). Count II alleges that California's regulation allowing unannounced inspections is a facial and as-applied violation of the Fourth Amendment because it authorizes warrantless searches of licensees' homes, curtilage, papers, and effects

(unannounced-inspections claim). In Count III, Katherine Stavrianoudakis alleges that the unannounced-inspection regulations violate her Fourth Amendment rights as a co-habitant of a falconer. Finally, Count IX alleges that the federal unannounced-inspection regulations violate the APA.

The district court dismissed all the Fourth Amendment-based claims without leave to amend. The district court concluded that the individual Plaintiffs' alleged injury related to future inspections was too speculative because they "have never been subjected to the unannounced inspections pursuant to the challenged regulations." Likewise, the district court found that AFC lacked associational standing because it did not allege that its members face immediate or threatened injury from unannounced, warrantless inspections. The district court dismissed the Fourth Amendment allegation in the APA claim because, without standing to bring their substantive claims, Plaintiffs lack standing to bring an APA-based challenge to the same regulations. A stipulated judgment was entered as to the remaining claims, and this appeal followed.

## II.  DISCUSSION

"We review de novo an order granting a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and construe all material allegations of fact in the complaint in favor of the plaintiff." *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 416–17 (9th Cir. 2020). "The party invoking federal jurisdiction bears the burden of establishing" the elements of standing, and "each element must be supported in the same way as any other matter on which the plaintiff bears the

burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### A.  Unconstitutional-Conditions Claim

The Falconers challenge the requirement, included in both the state and federal regulations, that they submit to unannounced, warrantless inspections as a condition of obtaining a falconry license. They claim that this requirement unconstitutionally conditions falconry licenses on waiver of "their Fourth Amendment rights to be free from unreasonable warrantless searches of their private homes, protected curtilage, and protected effects." The district court dismissed this claim, concluding that the Falconers lack standing and the claim is unripe because the Falconers failed to allege that they had been subjected to or imminently faced an unannounced inspection. We reverse as to the Falconers' claim against CDFW and affirm as to their claim against FWS.

### 1.  CDFW

### a.  Standing

The Falconers must establish the three "irreducible" elements of Article III standing. *Lujan*, 504 U.S. at 560. First, that they "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Second, that their "injury was likely caused by the defendant[s]." *Id.* And third, that their "injury would likely be redressed by judicial relief." *Id.*

We begin with injury. "Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right . . . in

exchange for a discretionary benefit . . . ." *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994). As the Supreme Court noted a century ago, the state may condition the benefits it bestows, but "the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights." *Frost v. Railroad Commission*, 271 U.S. 583, 593–94 (1925). This is so because "[i]f the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all." *Id.*

We have recognized that the unconstitutional-conditions "doctrine is especially important in the Fourth Amendment context" because, "[u]nder modern Fourth Amendment jurisprudence, whether a search has occurred depends on whether a reasonable expectation of privacy has been violated." *United States v. Scott*, 450 F.3d 863, 867 (9th Cir. 2006) (citing *Katz v. United State*s, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). "Pervasively imposing an intrusive search regime as the price of [a discretionary government benefit], just like imposing such a regime outright, can contribute to the downward ratchet of privacy expectations." *Id.* Accordingly, the doctrine applies when the government attempts to "exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary." *Id.* at 866–67.[2]

---

[2] At issue in *Scott* was whether a pretrial detainee can be induced to categorically give up his Fourth Amendment right against unreasonable search and seizure as a condition of release. We answered no. Even if a detainee signs a release agreement conditioned on submitting to warrantless search, the Fourth Amendment is satisfied only if "the search in question (taking the fact of consent into account) was reasonable." *Id.* at 868.

A plaintiff suffers a "constitutionally cognizable injury" whenever the government succeeds in pressuring the plaintiff into forfeiting a constitutional right in exchange for a benefit or the government withholds a benefit based on the plaintiff's refusal to surrender a constitutional right. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606–07 (2013); *id.* at 607 (holding that the plaintiff suffered a "constitutionally cognizable injury" where he refused to waive his constitutional rights and was therefore denied a discretionary benefit); *cf. Dolan*, 512 U.S. at 379 (reversing lower court's rejection of an unconstitutional-conditions claim where the "government had granted [the] petitioner's permit application subject to conditions" requiring the petitioner to waive her Fifth Amendment rights). That is, "regardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them." *Koontz*, 570 U.S. at 606.

Here, California conditions falconry licenses on applicants' annual certification that they "understand, and agree to abide by, all conditions of this license, the applicable provisions of the Fish and Game Code, and the regulations promulgated thereto," including unannounced, warrantless inspections. Cal. Code Regs. tit. 14, § 670(e)(2)(D); *id.* § 670(e)(4)(A). At face value, having to agree to such inspections of their "facilities, equipment, or raptors"—which include their homes, curtilage, and papers—as a condition of obtaining a falconry license constitutes a surrender of their Fourth Amendment right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const.

amend. IV; *see also Carpenter v. United States*, 585 U.S. 296, 304 (2018) (explaining that, although "[f]or much of our history, Fourth Amendment search doctrine was 'tied to common-law trespass' and focused on whether the Government 'obtains information by physically intruding on a constitutionally protected area,'" it has also been "expanded . . . to protect certain expectations of privacy as well" (citations omitted)).[3]

The question presented here is whether simply agreeing to submit to those inspections, in the absence of an actual inspection—*see* Part II.B—amounts to the relinquishment of Fourth Amendment rights. We conclude that it does. By successfully applying for a falconry license, the Falconers certify that they will forego a claim to Fourth Amendment protections. An inspection may not occur or, if it does, it may not violate the Fourth Amendment because it is reasonable. But the idea that the Falconers surrender nothing unless and until an unlawful inspection occurs—that California extracts a blanket waiver that is, in fact, entirely superfluous—defies logic. Rather, we take the regulation to mean what it says, and agreeing to unannounced, warrantless inspections without any consideration of the reasonableness of such inspections implicates Fourth Amendment rights. *See*

---

[3] The dissent's citation to Judge Bennett's concurrence in *Hotop v. City of San Jose*, 982 F.3d 710, 723 (9th Cir. 2020), for the proposition that allowing the Falconers' claim to proceed "with no allegation of an actual impending search" will subject the government to "inappropriate judicial scrutiny" is puzzling. Dissent at 36. Judge Bennett's point in *Hotop* was that the conduct at issue—requiring a regulated party to submit information to a government regulator on a required form—was not a search. *Hotop*, 982 F.3d at 720–21. Here, it cannot reasonably be disputed that CDFW entering the Falconers' property to inspect their falconry facilities and records would be a search as traditionally understood. *See United States v. Jones*, 565 U.S. 400, 408 n.5 (2012).

*Johnson v. Smith*, No. 23-3091, 2024 U.S. App. LEXIS 14019, at *8–33 (10th Cir. June 10, 2024) (outlining Fourth Amendment precedent concerning regulatory inspections).

Therefore, the Falconers' alleged injury in fact is the forced choice: retention of their Fourth Amendment rights or receipt of a falconry license, which is required to lawfully practice falconry. Cal. Code Regs. tit. 14, § 670(a)(1); *see Blackburn v. Snow*, 771 F.3d 556, 568 (1st Cir. 1985) (rejecting prison regulation requiring visitors to choose between submitting to a strip search or forgoing entry because "*it is the very choice to which the [plaintiff] was put* that is constitutionally intolerable—and it was as intolerable the second and third times as the first"). And the Falconers suffer this injury every time they renew their licenses, whether or not they are actually subjected to any unlawful inspections. *Koontz*, 570 U.S. at 606. The separate question of whether an unannounced, warrantless inspection by CDFW would violate the Fourth Amendment is not before us. *See Benjamin v. Stemple*, 915 F.3d 1066, 1068 (6th Cir. 2019) ("[The unconstitutional conditions] argument works, or at least begins to work, only if the required consent surrenders cognizable Fourth Amendment rights."). Although undoubtedly the "government may sometimes condition benefits on waiver of Fourth Amendment rights," whether the conditions imposed in this case offend the Fourth Amendment goes to the merits of the Falconers' claim, not to whether they have sufficiently alleged injury for standing purposes. *Scott*, 450 F.3d at 867.

In addition to injury, the two remaining standing elements are also satisfied, which the parties seemingly concede. CDFW enforces California's falconry-license requirements, Cal. Code Regs. tit. 14, § 670, and the declaratory and injunctive relief that Falconers seek—

preventing enforcement of the challenged condition—would redress their claimed injuries, *see Epona, Ltd. Liab. Co. v. County of Ventura*, 876 F.3d 1214, 1220 (9th Cir. 2017).

### b. Ripeness

Article III also requires that a plaintiff's claim be ripe for adjudication. *See Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021) ("The ripeness doctrine, which aims to avoid premature and potentially unnecessary adjudication, 'is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003))). There are two ripeness considerations: constitutional and prudential.

Constitutional ripeness overlaps with the injury-in-fact element of Article III standing, and "therefore the inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract." *Id.* (internal quotation marks and citation omitted). Because the Falconers sufficiently allege an injury in fact, constitutional ripeness is satisfied.

Prudential ripeness concerns "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (quoting *US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999)). In cases against a government agency, relevant considerations include "whether the administrative action is a definitive statement of an agency's position; whether the action has a

direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms." *Id.* (quoting *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 780 (9th Cir. 2000)).

Here, the challenged licensure condition is final and is imposed annually. While the record is "admittedly sparse," as in *Stormans*, the challenged circumstances "are not hypothetical"—when the Falconers apply for a license renewal, they must include the certification that they agree to submit to warrantless, unannounced inspections. *Id.* Whether that condition violates the Fourth Amendment is a "primarily legal" inquiry. *Id.* Accordingly, this issue is fit for judicial review.

As to hardship, "a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Id.* (quoting *US W. Commc'ns*, 193 F.3d at 1118). Relevant considerations include "whether the 'regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance.'" *Id.* (quoting *Ass'n of Am. Med. Colls.*, 217 F.3d at 783). The Falconers have shown hardship because, "unless [they] prevail in this litigation, they will suffer the very injury they assert"—waiving their Fourth Amendment rights as a condition of lawfully practicing falconry. *Id.*

For all these reasons, we reverse the district court's dismissal of the Falconers' unconstitutional-conditions claims against CDFW for lack of standing.

## 2.  FWS

The Falconers' unconstitutional-conditions claim asserted against FWS is unripe. As just discussed, "[f]or a case to be ripe, it must present issues that are definite and concrete, not hypothetical or abstract." *Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018) (citation omitted); *see also Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (explaining that when "measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing" (citation omitted)).

Here, because FWS has delegated falconry licensing authority to California, a lengthy chain of events would have to take place before the Falconers could show a remediable impact traceable to FWS. First, on remand, the district court would have to enjoin the challenged aspects of California's licensing scheme as violative of the Falconers' Fourth Amendment rights. Second, the injunction would have to trigger a federal review and, ultimately, revocation of California's licensing scheme. *See* 50 C.F.R. § 21.82(b)(4)(vi), (5)(i) (authorizing FWS to review an approved State's program to determine whether the laws meet the minimum federal requirements and to "suspend[] the approval of a State . . . falconry program" that it determines "has deficiencies"). Third, FWS would have to reintroduce a federal licensing scheme with the same unconstitutional conditions, notwithstanding the district court's order that such conditions (as embodied in the

California scheme) are unconstitutional.[4] Finally, the Falconers would have to apply for a federal falconry license, at which time they would once again be forced to choose between a license and their Fourth Amendment rights.

The Falconers suggest that because California's challenged licensure requirement is imposed at the direction of a federal regulation, 50 C.F.R. § 21.82(d)(2)(ii), the responsibility for the unconstitutional conditional essentially passes through to FWS. While this reasoning has some intuitive appeal, it fails to account for the fact that FWS ceded its parallel licensing authority and delegated full falconry licensing authority within California to California. *See* Migratory Bird Permits, 73 Fed. Reg. 59,448, 59,448 (Oct. 8, 2008) ("[A] State, tribal, or territorial falconry permit" is all that is required to lawfully practice falconry.); Migratory Bird Permits; Delegating Falconry Permitting

---

[4] This step is particularly unlikely. Federal regulations provide that if FWS suspends a state's program, it "will honor all falconry permits in that jurisdiction for 2 years from the date of our final notification of suspension of certification." 50 C.F.R. § 21.82(b)(5)(v). After two years, all raptors held under permits from the suspended state must be transferred into "other States or territories, or to Federal raptor propagation or education permittees, institutions exempt from the Federal permit requirements, or permanently released to the wild (if it is allowed by the State, tribe, or territory and by this section), or euthanized." *Id*. It seems unlikely that FWS would deviate from this approach because during the rulemaking process ending parallel permitting, FWS received a comment requesting that FWS take over a suspended state program, rather than follow the process outlined above. In response, FWS said "[t]he elimination of the Federal permit was considered at the request of the States. We cannot afford to support permitting positions just for States that fail in their permitting programs." Migratory Bird Permits, Changes in the Regulations Governing Falconry, 73 Fed. Reg. 59,448, 59,452 (Oct. 8, 2008).

Authority to 17 States, 78 Fed. Reg. 72,830, 72,830–33 (Dec. 4, 2013) (delegating falconry permitting to California).

It may be that if California falls out of full compliance with federal regulations by not requiring license applicants to "agree that the[ir] falconry facilities and raptors may be inspected without advance notice," 50 C.F.R. § 21.82(d)(2)(ii), federal review would be triggered that could lead to revocation of California's licensing authority, 50 C.F.R. § 21.82(b)(4)(vi), (5)(i). But it is not certain this is what would happen in the face of an adverse judicial decision and injunction. FWS may respond differently to a state that simply stops enforcing a federal requirement of its own volition compared to a state that has been enjoined by a federal court from enforcing a regulation as a constitutional matter.[5]

We conclude that the connection between the Falconers' asserted injury and FWS is too attenuated and hypothetical at this point to support federal jurisdiction over Falconers' unconstitutional-conditions claim asserted against FWS.

## B. Unannounced-Inspections Claim

The Falconers also directly contend that the federal and California authorization of unannounced-inspections, 50 C.F.R. § 21.82(d)(9); Cal. Code Regs. tit. 14, § 670(j)(3)(A), violate the Fourth Amendment both facially and as-applied

---

[5] *See generally* Aditya Bamzai, The Path of Administrative Law Remedies, 98 Notre Dame L. Rev. 2037, 2062–64 (2023) (discussing agencies' acquiescence to non-binding court decisions); Nicholas Parillo, The Endgame of Administrative Law and the Judicial Contempt Power, 131 Harv. L. Rev. 685, 691 n.15 (2018) (same); *see also generally* Benjamin M. Barczewski, Cong. Rsch. Serv., R47882, Agency Nonacquiescence: An Overview of Constitutional and Practical Considerations (2023).

because they authorize "unreasonable warrantless searches of Falconers' private homes, protected curtilage, and other property." Again, the Falconers seek declaratory and injunctive relief. The district court also dismissed this claim on the basis that the Falconers failed to show sufficient injury to satisfy Article III standing. We agree.

The Falconers' direct challenge fails because they have not alleged that they were subjected to warrantless inspection under the challenged regulations. *See Hotop v. City of San Jose*, 982 F.3d 710, 716 n.4 (9th Cir. 2020) (concluding that plaintiffs' allegations "support[ed] only a facial challenge to the regulations" because the complaint did not allege that the regulations had been unlawfully applied to the plaintiffs in the past); *cf. Potter v. City of Lacey*, 46 F.4th 787, 801 (9th Cir. 2022) (Bennett, J., dissenting) ("Potter also argues that the RV Parking Ordinance violates the Fourth Amendment. Because police never seized Potter's RV, he can raise only a facial Fourth Amendment challenge to the ordinance."). At best, Timmons and Peter Stavrianoudakis alleged that they were subjected to warrantless inspections decades ago under a different regulatory scheme.[6] Thus, we address only the Falconers' facial challenge. *See City of Los Angeles v. Patel*, 576 U.S.

---

[6] Timmons and Peter Stavrianoudakis allege that they were unconstitutionally searched by CDFW agents in 1992 and 1983, respectively. Those searches occurred many years before the federal government issued the current regulations, Migratory Bird Permits, Changes in the Regulations Governing Falconry, 73 Fed. Reg. 59,448, 59,448 (Oct. 8, 2008), and delegated falconry permitting to California, Migratory Bird Permits; Delegating Falconry Permitting Authority to 17 States, 78 Fed. Reg. 72,830, 72,830–33 (Dec. 4, 2013). Accordingly, to the extent these Plaintiffs bring an as-applied challenge based on searches that occurred under an outdated regulatory scheme, those searches have no bearing on the standing analysis.

409, 415 (2015) (holding that "facial challenges under the Fourth Amendment are not categorically barred or especially disfavored").

The Falconers rely on *Meland v. Weber*, which held that when a party "is the actual object of the government's regulation, then 'there is ordinarily little question that the action or inaction has caused him injury.'" 2 F.4th 838, 845 (9th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561–62); *see also Illinois v. Krull*, 480 U.S. 340, 354 (1987). They contend that because the unannounced-inspection requirement applies only to licensed falconers, they are the objects of this regulation. But plaintiffs have standing "as the objects of regulation" only when the challenged regulation imposes a "clear burden" on them. *Cal. Sea Urchin Comm'n v. Bean*, 883 F.3d 1173, 1181 (9th Cir. 2018), *as amended* (Apr. 18, 2018). A clear burden is established when, for example, the challenged regulation "is directed at [plaintiffs] in particular" and "requires them to make significant changes in their everyday business practices," *Abbott Lab'ys*, 387 U.S. at 154, or when a law creates a "coercive effect" that "require[s] (or at least encourage[s])" plaintiffs to act in a manner that could amount to unconstitutional discrimination, *Meland*, 2 F.4th at 846–47.

Here, the Falconers failed to identify any comparable, concrete effects—such as self-censorship or any kind of behavioral change—prompted by the unannounced-inspections provisions that would amount to a clear burden. Rather, they essentially claim that they feel threatened by the possibility of a future inspection. No authority establishes that mere discomfort constitutes constitutional injury.

We also are not persuaded that the object-of-regulation analysis is the correct paradigm. Instead, because the

Falconers seek declaratory and injunctive relief, we consider whether they have "Article III standing to seek prospective relief." *Villa v. Maricopa County*, 865 F.3d 1224, 1229 (9th Cir. 2017). In this context, a plaintiff "must allege either continuing, present adverse effects due to . . . exposure to Defendants' past illegal conduct, or a sufficient likelihood that [plaintiff] will again be wronged in a similar way." *Id.* (internal quotation marks and citations omitted). The Falconers' allegations do not address the present-adverse-effect criterion in any way. Standing therefore depends on whether they have alleged a "sufficient likelihood" of a future wrong.

The Falconers acknowledge that they have not been inspected (at least not in several decades), but they contend that the "pattern or practice of unreasonable warrantless searches" authorized by the unannounced-inspection provisions create a likelihood of future individualized injury. This is insufficient to "show that the threat of future injury is 'actual and imminent, not conjectural or hypothetical.'" *Bolden-Hardge v. Off. of the Cal. State Controller*, 63 F.4th 1215, 1220 (9th Cir. 2023) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

The Falconers argue that it is impossible for them to identify with any certainty when *unannounced* inspections will occur. That may be, but the Falconers failed to allege *any* facts about the frequency or volume of unannounced inspections that California regulators undertake, which would inform the "likelihood" that the Falconers face a risk of such inspection. *Cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164–65 (2014) (holding that injury was imminent because plaintiffs demonstrated that enforcement actions took place 20 to 80 times each year and thus "are not a rare occurrence"). Rather, the Falconers rely primarily on

the existence of the regulation authorizing unannounced inspections. While the regulation is of course material, mere speculation that regulators will exercise their inspection authority is insufficient to establish standing for a claim seeking prospective relief. *See, e.g.*, *Cal. Tow Truck Ass'n v. City & County of San Francisco*, 693 F.3d 847, 866 (9th Cir. 2012) ("[T]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." (quoting *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996))).

In sum, the Falconers have not sufficiently demonstrated injury in fact as to their unannounced-inspection claim.[7] Based on the allegations presented, "[n]o violation of the laws is on the horizon and no enforcement action or prosecution is either threatened or imminent. . . . [A]t this stage the dispute is purely hypothetical and the injury is speculative. Whether viewed through the lens of standing or ripeness, resolution of the [Fourth] Amendment issues is premature." *Thomas*, 220 F.3d at 1137. Because the Falconers lack standing to directly challenge the authorization of unannounced inspections, they also lack standing to challenge this authorization under the APA.

---

[7] Katherine Stavrianoudakis is positioned differently than the other individual Plaintiffs because she is not a falconer. She alleges that the unannounced-inspection provisions violate her Fourth Amendment rights because she shares a home with a licensed falconer. The district court dismissed her claim because she did not show that she was subjected to an unannounced inspection. On appeal, the parties did not specifically address her standing arguments. We conclude that Katherine Stavrianoudakis does not have standing for the same reasons that the Falconers do not have standing.

## C.  AFC's Claims

AFC also asserts an unconstitutional-conditions claim and an unannounced-inspection claim on behalf of its members. AFC alleges that the inspection regulations injure its members, not the organization itself. *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 798 (9th Cir. 2001) ("[A]n organization may have standing to assert the claims of its members even where it has suffered no direct injury from a challenged activity."). To establish associational standing and bring suit on behalf of its members, AFC must establish that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Cent. Sierra Env't Res. Ctr. v. Stanislaus Nat'l Forest*, 30 F.4th 929, 937 (9th Cir. 2022) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). Like the individual Plaintiffs, we conclude that AFC has met these requirements for its unconstitutional-conditions claim but not for its unannounced-inspection claim.

Regarding the unconstitutional-conditions claim asserted against CDFW, the first requirement is satisfied because the Falconers are AFC members and they have individual standing to bring the unconstitutional-conditions claim. The second requirement is also met because AFC's interest in ensuring that its members are not subject to unconstitutional conditions in obtaining falconry licenses is germane to AFC's purpose of promoting "the broadest liberties possible" for falconers. And the third requirement is fulfilled because AFC requests only declaratory and

injunctive relief, which "do not require individualized proof." *Columbia Basin Apartment Ass'n*, 268 F.3d at 799.

But as with the Falconers' claims, we affirm the district court's dismissal of AFC's unconstitutional-conditions claim as asserted against FWS and its unannounced-inspection claim. For the reasons discussed regarding the Falconers, AFC's unconstitutional-conditions claim against FWS is not ripe. As to AFC's unannounced-inspection claim, the first requirement of organizational standing is not met. The Falconers failed to establish sufficient injury to have standing to bring this claim. AFC points to four of its members who are not parties here and who have experienced unannounced inspections. Specifically, AFC alleges that FWS conducted warrantless inspections of the homes and property of the Washington members in 2004 and 2009, and that CDFW conducted warrantless inspections of the homes and property of the California members in 2016 and 2017. The question is whether these inspections caused an injury that establishes standing for those members and, in turn, AFC. They did not.

Even assuming that the alleged prior warrantless inspections demonstrate that AFC's non-party members suffered injury, such injury supports only a damages claim to remedy a past violation. *Bolden-Hardge*, 63 F.4th at 1221. Because AFC seeks prospective relief—and "at least one member" of an organization must have "standing to present, in his or her own right, *the claim (or the type of claim)* pleaded by the association"—more must be shown as relates to the California and Washington members. *United Food & Com. Workers Union Loc. 751 v. Brown Grp.*, 517 U.S. 544, 555 (1996) (emphasis added).

As previously discussed, "standing to seek prospective relief" exists where plaintiffs are suffering either "continuing, present adverse effects" from the defendants' past illegal conduct or "a sufficient likelihood" that they will be similarly wronged again in the future. *Villa*, 865 F.3d at 1229 (citations omitted). Just like the Falconers, AFC's allegations do not address the first criterion in any way. And as to the second criterion, the operative complaint merely sets out the general allegation that "[w]arrantless searches of American Falconry Conservancy members' private homes and other property by Defendants is widespread and on-going," without any specificity about the likelihood that the Washington and California AFC members will be inspected without a warrant again. It is also worth noting that each AFC member identified was subjected only to one past inspection that occurred several years ago. These allegations do not establish "that the threat of future injury is 'actual and imminent,'" as opposed to "'conjectural or hypothetical.'" *Bolden-Hardge*, 63 F.4th at 1220 (quoting *Summers*, 555 U.S. at 493). AFC therefore lacks standing to bring its unannounced-inspection claim based on its identified Washington and California members because, although "[p]ast wrongs may serve as evidence of a 'real and immediate threat of repeated injury,' . . . they are insufficient on their own to support standing for prospective relief." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983)).

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**[8]

---

[8] Each party shall bear its own costs.

S.R. THOMAS, Circuit Judge, concurring in part and dissenting in part:

The question in this case is whether Plaintiff-Falconers have standing to challenge state and federal falconry regulations as violative of their Fourth Amendment rights. I agree that the district court properly dismissed Falconers' claim that the regulations violate the Fourth Amendment because they have not been subjected to an inspection under the current regulations and cannot establish that a future inspection is imminent. I respectfully disagree that Falconers have standing to challenge the state regulations under the unconstitutional-conditions doctrine instead. Because I would affirm the district court's dismissal of all of Falconers' remaining claims, I respectfully dissent in part.

I

The Fourth Amendment guarantees "the right of the people . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "[R]easonableness" is the "ultimate measure of . . . constitutionality" and is judged by balancing the intrusion on the individual's reasonable expectation of privacy against the "promotion of legitimate government interests." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). In assessing whether a search was "reasonable," the fact that an individual consented to the search, and the conditions under which such consent was obtained, may be relevant. *See United States v. Scott*, 450 F.3d 863, 867–68 (9th Cir. 2006); *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973) ("the Fourth [] Amendment[] require[s] that consent not be coerced"). However, the fact that an individual has consented to a search as a condition of obtaining some benefit "does not by itself make an otherwise unreasonable search reasonable." *Scott*, 450 F.3d at 871.

While most Fourth Amendment challenges concern the reasonableness of a particular search, the Supreme Court has clarified "facial challenges under the Fourth Amendment are not categorically barred." *City of L.A., Calif. v. Patel*, 576 U.S. 409, 415 (2015). To mount a facial challenge, however, a plaintiff must still satisfy the requirements for Article III standing by pleading a concrete injury-in-fact in the same manner required for an as-applied challenge. *See Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409–14 (2013). Where the plaintiff has already been subjected to a search or seizure, the past intrusion can satisfy the constitutional injury requirement. *See, e.g.*, *Patel*, 576 U.S. at 413–14; *Garcia v. City of L.A.*, 11 F.4th 1113, 1117 (9th Cir. 2021). Where no search or seizure has yet occurred, a plaintiff only has standing if they can establish that one is "certainly impending." *Clapper*, 568 U.S. at 409; *see also Columbia Basin Apartment Ass'n. v. City of Pasco*, 268 F.3d 791, 797 (9th. Cir. 2021).

Like all justiciability doctrines, the injury-in-fact requirement is designed to ensure that we "adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III." *Thomas v. Anchorage Equal Rights Com'n.*, 220 F.3d 1134, 1138 (9th Cir. 2000). "By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 381 (2024).

As the majority opinion recounts, Falconers' operative complaint advances two alternative theories of Fourth Amendment injury. First, Falconers allege they are injured by the "ongoing threat" of future unreasonable searches. The majority properly affirmed dismissal of claims based on

this theory because Falconers cannot demonstrate a "sufficient likelihood" that they will be subjected to a future search. *City of L.A.v. Lyons*, 461 U.S. 95, 111 (1983). Alternatively, Falconers allege they are injured by the act of giving consent to future inspection because they are forced to "waive" their the Fourth Amendment rights as a condition of licensure. In my view, this alternative "unconstitutional-conditions" theory fares no better because the act of giving consent, without more, is not a cognizable injury under our precedents.

## II

The unconstitutional-conditions doctrine prohibits "the government from coercing people into giving [] up [constitutional rights]" by withholding benefits "from those who exercise them." *Koontz v. Johns Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). The doctrine originates in the *Lochner* Era, where it was used to strike down restrictions on commercial activity imposed as a "condition" of doing business. *See, e.g. Frost & Frost Trucking Co. v. RR Comm'n*, 271 U.S. 583, 591–92 (1926); *W. Union Telegraph Co. v. State of Kansas ex rel. Coleman*, 216 U.S. 1, 35 (1910); *see also Kathleen M. Sullivan*, Unconstitutional Conditions, 102 Harv. L. Rev. 1413, 1416 (1989). The conflict in those cases arose after the government brought an enforcement against a business entity for failing to abide by the restriction. *Frost*, 271 U.S. at 590; *W. Union Telegraph*, 216 U.S. at 7. Later, the unconstitutional-conditions doctrine was extended to government policies requiring individuals to forgo—or retaliating against individuals for engaging in—protected expression as a condition of receiving some benefit. *See, e.g., Bd. of Cnty. Com'rs, Wabunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 674–75 (1996); *Speiser v. Randall*, 357 U.S. 513, 529 (1958). The

plaintiffs in those cases were injured by the government's termination of employment or denial of some benefit based on the plaintiffs' "engaging in [protected] speech." *Speiser*, 357 U.S. at 518; *see also Umbehr*, 518 at 617.

Today, the unconstitutional-conditions doctrine is most often litigated in the in the land use context, where it restricts local governments from "forc[ing]" a landowner to forego "her right under the Fifth Amendment to just compensation" in exchange for a land use permit. *Dolan v. City of Tigard*, 512 U.S. 374, 385–86 (1994). In land use cases, the injury that gives rise to constitutional standing is either the uncompensated appropriation of property rights, *Nollan v. California Coastal Com'n*, 483 U.S. 825, 831 (1987), or the "impermissible denial" of authorization to fully develop the landowner's property. *Koontz*, 570 at 607. These injuries occur at the time of the permitting decision, which effects a concrete change in the scope of the owner's property right.

In the Fourth Amendment context, we have recognized that the unconstitutional-conditions doctrine may be relevant in assessing whether a warrantless search or seizure was "reasonable." In *Scott*, for example, we considered whether defendant Scott's consent to the warrantless search of his home "as a condition to [pre-trial] release" made the state's subsequent search of his home reasonable. 459 F.3d at 865. We explained that the unconstitutional-conditions doctrine prevents the government from making "end-runs" around constitutional protections by "attaching strings" to "conditional benefits." *Id*. at 866. We concluded that "Scott's assent to his release conditions does not by itself make an otherwise unreasonable search reasonable" and affirmed the district court's order granting Scott's motion to suppress the fruits of the search. *Id*. at 871, 875. *Scott* did

*not* address the validity of Nevada's pretrial release regime under which Scott's consent was obtained in the first place.

The application of the unconstitutional-conditions doctrine to cases like this, where no search has occurred and the only alleged injury is the signing of a form, is far from "settled."  Indeed no federal court has held that the act of giving consent itself constitutes injury absent an actual or imminently impending search.  The majority's assertion that Falconers are injured "every time they renew their licenses," is unsupported by precedent.

The recognition of this new type of injury has the unfortunate effect of opening a loophole in our standing jurisprudence.   By allowing Falconers to mount an "unconstitutional-conditions" challenge to a law that they do not have standing to challenge directly, the majority opinion undercuts the restriction of prospective relief to those cases where the plaintiff "has suffered or is threatened with a concrete and particularized legal harm[.]"  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 680 (9th Cir. 2023) (en banc).

## III

Even if the imposition of an inspection requirement could by itself violate the unconstitutional-conditions doctrine, Falconers have not demonstrated that CDFW's regime actually burdens a protected right.  That is because the Fourth Amendment protects only individual's right to be free from "*unreasonable* searches and seizures"—not the absolute right to deny all access to one's home. U.S. Const. amend. IV (emphasis added).  Because Falconers have not pleaded any facts to demonstrate that they will be forced to endure "unreasonable" inspections, they have not

demonstrated that they had to "give up" any constitutional right. *Dolan*, 512 U.S. at 385.

Where the unconstitutional conditions doctrine applies, it bars the forced surrender of rights protected of the Constitution. *Koontz*, 570 U.S. at 606. Neither Falconers nor the majority explain precisely which constitutional protections Falconers have been forced to forgo. Falconers' brief, for example, refers to the "right to demand a warrant," but that is not an accurate description of what the Fourth Amendment protects. *See United States v. Kincade*, 379 F.3d 813, 822–24 (9th Cir. 2004) (discussing exceptions to the warrant requirement). Falconers do not, for instance, have the right to demand a warrant prior to a valid administrative search, or a search justified by non-law enforcement "special needs." *Id*. at 823. Further, our precedent clearly establishes that the act of giving consent does *not* constitute a waiver of an individuals's right to invoke the Fourth Amendment in the future. *See Scott*, 450 F.3d at 868 (discussing and rejecting "the waiver theory" of "Fourth Amendment rights").

The majority asserts that the substance of Fourth Amendment law is not relevant to standing because it goes to "the merits" of Falconers' claim. This statement reflects the familiar principle that "jurisdictional inquiry" is different from "merits inquiry." *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 834 (9th Cir. 2021); *see also Rakas v. Illinois*, 439 U.S. 128, 138 (1978) (distinguishing between "standing to invoke the exclusionary rule" and the "substantive question" of whether the exclusionary rule applies.). However, this principle does not render the substance of Fourth Amendment law *irrelevant* to our standing analysis, especially in the context of the an unconstitutional-conditions claim, where the specification of

a burdened right is an essential element Falconer's theory of Article III injury. If the signing of a form without more never amounts to a violation of the Fourth Amendment, that legal conclusion is certainly relevant to the jurisdictional inquiry. We should not credit Falconers' assertion that they "forego a claim to Fourth Amendment protections" by virtue of agreeing to future inspections when our Fourth Amendment case law clearly holds otherwise. *See Scott*, 450 F.3d at 868.

Finally, in addition to the legal infirmities addressed above, there are prudential reasons to doubt Falconers' demand for "robust constitutional scrutiny" of "warrantless search conditions . . . on government benefits, licenses, and privileges." By delinking Article III injury analysis from the substance of Fourth Amendment law, Falconers' unconstitutional conditions theory effectively softens the standing requirements that guard against meritless challenges to manifold reasonable regulations.

The government regularly requires citizens to consent to search and seizure as a condition of receiving some benefit or participating in some activity. We have repeatedly confirmed the reasonableness of various types of routine "suspicionless search[]" under longstanding exceptions to the warrant requirement. *Kincade*, 379 F.3d at 823. Familiar examples of include physical pat-downs conducted by TSA agents as a condition of flying, *see e.g.*, *Gilmore v. Gonzales*, 435 F.3d 1125, 1138 (9th Cir. 2006); *United States v. Marquez*, 410 F.3d 612, 616 (9th Cir. 2005); sobriety tests conducted by police officers as a condition of driving on public roads, *see, e.g.*, *Demarest v. City of Vallejo, Cal.*, 44 F.4th 1209, 1212–20 (9th Cir. 2022)*; Birchfield v. North Dakota*, 579 U.S. 438, 478 (2016); building inspections conducted by city officials as a condition of receiving a

rental or business license, *see, e.g.*, *Killgore v. City of S. El Monte*, 3 F.4th 1186, 1190 (9th Cir. 2021); *Rush v. Obledo*, 756 F.2d 713, 720 (9th Cir. 1985); and searches conducted by probation and parole officers as a condition of supervised release, *see e.g.*, *United States v. Betts*, 511 F.3d 872, 877 (9th Cir. 2007).

Under the majority's logic, a plaintiff would have standing to challenge the laws and regulations authorizing all of these practices at the moment they agree to the condition, either expressly by signing a form, or impliedly by participating in the regulated activity. This expansion in constitutional standing under the Fourth Amendment will lead to dramatic expansion in meritless facial challenges to all kinds of regulations adopted to protect public health, welfare, and safety. Allowing these kinds of Fourth Amendment claims to proceed with no allegation of an actual impending search "will subject government at every level to inappropriate judicial scrutiny of its actions . . . ." *Hotop v. City of San Jose*, 982 F.3d 710, 723 (9th Cir. 2020) (Bennett, J., concurring).

In sum, Falconers' unconstitutional-conditions theory reflects an impermissible attempt to circumvent the Article III injury requirement in the context of the Fourth Amendment. I would affirm the district court dismissal of the Plaintiffs' claims in their entirety. Thus, I respectfully dissent, in part.